IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| ANTJUAN PROCTOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAIRFAX COUNTY FIRE AND )<br>RESCUE DEPARTMENT, )<br>)<br>Defendant. ) | Civil Action No. 1:13-cv-1427 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's motion for summary judgment.

Following his arrest for Driving Under the Influence, Plaintiff Antjuan Proctor entered a "back-to-work agreement" ("the Agreement") in lieu of removal from employment in the Fairfax County Fire and Rescue Department ("Fire Department" or "Defendant"). Under the relevant terms of the Agreement, Plaintiff was required to abstain from all mood-altering substances and submit to random, unannounced drug and alcohol testing. Less than two months after he entered the Agreement, Plaintiff tested positive for the illegal drug phencyclidine ("P.C.P."). He now challenges his subsequent removal, claiming it was the result of racial bias. Because he has not presented any evidence indicating Defendant's actions were taken for any

reason other than Plaintiff's positive drug test and his violation of the Agreement, his claim fails.

Plaintiff began his employment with the Fire Department on April 10, 2000. Following his arrest in Charles County, Maryland on August 26, 2011, he pleaded guilty to Driving While Impaired by Alcohol. As a result of his arrest and conduct, his removal from the Fire Department was proposed on September 16, 2011. Instead of immediately removing Plaintiff from the Fire Department, Fire Chief Ronald Mastin allowed him to enter the Agreement, giving him a second chance at his career.

The Agreement laid out specific conditions Plaintiff was required to comply with in order to maintain his job. Among its terms and conditions, the Agreement forbade the use of "all illegal substances" and required Plaintiff to submit to random unannounced drug testing. When he entered the Agreement, Plaintiff agreed that his "continued employment is contingent upon satisfactory compliance with all [its] terms and conditions." The Agreement was signed by Plaintiff and Chief Mastin on September 28, 2011.

On November 16, 2011, Plaintiff was tested for alcohol and illegal drugs in accordance with the Agreement. He tested positive for P.C.P., and a subsequent gas chromatography/mass spectrometry test confirmed this result. After the test results were forwarded to the Fire Department on February 7, 2012,

Plaintiff was terminated for violating the Fire Department's rules and regulations concerning truthfulness and unbecoming conduct.

Plaintiff filed a complaint on November 20, 2013, alleging his termination resulted from illegal employment discrimination based on his race. Specifically, that his removal was the result of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and that Defendant violated his civil rights under 42 U.S.C. §§ 1981 and 1983.[1] Defendant now moves for summary judgment.

Title VII states that "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…." 42 U.S.C. § 2000e-2(a)(1). Section 1981, which applies to local governments in addition to private employers, prohibits racial discrimination in the making and enforcement of contracts, including employment contracts, and encompasses retaliation claims. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008). When a local governing body violates the constitutional rights

---

[1] In his complaint, Plaintiff stated his misgivings about the administration of his drug test. However, the *Defendant's actions*, not the adequacy of the Plaintiff's test, are before this Court. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Plaintiff was given a routine drug test, his sample came back positive for P.C.P., and the test was confirmed by a gas chromatography/mass spectrometry test. Chief Mastin, acting on behalf of Defendant, was fully justified in basing his decision on the test.

of a plaintiff, § 1983 allows lawsuits "for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Services of City of N.Y., 436 U.S. 658, 690 (1978).

Plaintiff's Title VII claims (discrimination and retaliation) and his § 1981 claim are both subject to the burden-shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as he has presented no direct evidence of discrimination. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) ("The McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985))). The initial burden is on the plaintiff to raise an inference of discrimination by establishing a prima facie case of discrimination by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for its actions. Id. at 253. Then, if the defendant successfully carries its burden, "the plaintiff [has] an opportunity to prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. The McDonnell Douglas burden shifting analysis applies to Plaintiff's Title VII claims (both discrimination and retaliation) as well as his § 1981 claim. Lewis v. Cent. Piedmont Cmty. Coll., 689 F.2d 1207, 1209 n.3 (4th Cir. 1982) ("[I]t has been held, and we think correctly, that the McDonnell Douglas criteria apply equally to cases arising under Title VII or § 1981") (citing Hudson v. Int'l Bus. Mach. Corp., 620 F.2d 351, 354 (2d. Cir. 1980)).

"The framework of proof for disparate treatment claims…is the same for actions brought under Title VII, or § 1981, or both statutes." Hope v. St. Anthony Publ'g, Inc., 51 F.3d 266, *3 (4th Cir. 1995). In order to establish a prima facie case of discrimination under either statute, Plaintiff must show: (1) he is a member of a protected class; (2) he had satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his protected class received more favorable treatment. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The parties agree the first three elements are satisfied, but they dispute whether Plaintiff was treated differently than similarly situated employees outside his protected class. In support of his discrimination claim, Plaintiff points to two Caucasian Fire

Department employees that entered back-to-work agreements, violated their agreements' prohibition on alcohol consumption, but ultimately retained their jobs. However, these comparators were not similarly situated to Plaintiff. Therefore, he cannot establish a prima facie case of discrimination under Title VII or § 1981.

Identical circumstances are not required for employees to be "similarly situated." Instead, employees are required to be "similar in all relevant respects." Bateman v. American Airlines, Inc., 614 F. Supp. 2d 660, 674 (E.D. Va. 2009) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997), Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992), and Smith v. Monsanto Chem. Co., 770 F.2d 719, 723 (8th Cir. 1985).) Plaintiff is not "similar in all relevant respects" to these employees just because they all entered and violated back-to-work agreements. The nature of their violations must also be considered.

The Agreement's strict conditions provided Chief Mastin substantial discretion to determine how to handle violations. This is consistent with the nature of the Agreement, which is not a standard employment contract where both parties agree to a series of conditions, but is instead a discretionary lifeline provided to employees whose conduct justifies their removal from

the Fire Department. The benefit of the Agreement—job retention in the face of removable conduct—is entirely in favor of the employee; but broad discretion over enforcement of the Agreement rightfully belongs to the Fire Department.

The terms of the Agreement can be violated in a number of ways; including alcohol consumption, illegal drug use, use of over-the-counter medications, use of dietary supplements, and use of prescription medications. Plaintiff errs in his assertion that employees who violate the agreement by using P.C.P. (or, heroin, cocaine, methamphetamine, etc.), alcohol, cough syrup, antibiotics, and weight-loss supplements are all similarly situated. Not all violations of the Agreement are created equal, and Plaintiff's use of P.C.P. does not make him similarly situated to employees that tested positive for alcohol.[2] Chief Mastin acted well within the discretion provided him by the Agreement when he distinguished between employees that violated it by legally drinking alcohol and Plaintiff, whose violation for P.C.P. use would have justified his removal regardless of the Agreement.

Plaintiff fails to produce any evidence supporting his retaliation claims under Title VII and § 1981. Although status-based discrimination claims pass muster when unlawful

---

[2] Even if Plaintiff was similarly situated to the two Caucasian employees, the Fire Department's distinction between P.C.P. and alcohol is a legitimate non-discriminatory reason for its actions, and the Plaintiff has not provided evidence of pretext.

discrimination is merely a "motivating factor" for an employer's actions; retaliation claims are subject to a higher "but for" causation standard, under which Plaintiff must show the causal link between his protected activity and his removal is so close that his removal would not have occurred but for his protected activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013). Here, Plaintiff cannot plausibly argue his protected activity was the "but for" cause of his removal, as his positive test for P.C.P. occurred contemporaneously with his protected activity. To accept this argument is to believe Chief Mastin did not consider Plaintiff's drug test at all when he made his decision. In the absence of any supporting evidence, this far-stretched allegation fails.

Finally, Plaintiff's claim under § 1983 also fails, as he provides no evidence (or allegation) that Chief Mastin's decision to remove him was the implementation or execution of a Fire Department policy statement, ordinance, regulation, or decision officially adopted and promulgated by the Fire Department's officers.

Plaintiff has not established a prima facie case of race discrimination or retaliation under Title VII, nor has he put forth sufficient evidence to support his claims under §§ 1981 and 1983. There are no genuine issues of material fact that

require resolution, and Defendant is entitled to summary judgment.

An appropriate order shall issue.

                                                    /s/ Claude M. Hilton
                                                    CLAUDE M. HILTON
                                                    UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 14, 2014